**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL PRECISION COMPONENTS CORPORATION, | ) ) ) | |
| | ) | No. 17 C 9179 |
| Plaintiff, | ) ) | |
| v. | ) ) | Hon. Virginia M. Kendall |
| | ) | |
| GREENPATH RECOVERY WEST, INC. and JOSEPH CASTRO, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff International Precision Components Corporation (IPCC) filed suit against Greenpath Recovery West, Inc. and Joseph Castro (collectively, Defendants) in the Circuit Court of Lake County, Illinois alleging one claim for breach of contract.  (*See* Dkt. No. 1).  On December 21, 2017, Defendants removed the case to federal court (*id.*) and, on February 5, 2018, filed a Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) and, in the alternative, for improper venue based on the existence of a forum selection clause pursuant to Rule 12(b)(3) and for failure to state a claim based on the doctrine of *res judicata* pursuant to Rule 12(b)(6).  (Dkt. No. 19).  For the following reasons, the Court grants Defendants' Motion to Dismiss [19] without prejudice for lack of personal jurisdiction pursuant to Rule 12(b)(2).

## BACKGROUND

The following facts are based on the allegations in the Complaint and the statements provided in the affidavits submitted by both parties that controvert or supplement the Plaintiff's

allegations. To determine a motion to dismiss for lack of personal jurisdiction, the Court "take[s] as true all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

IPCC is an Illinois corporation with its sole offices located in Lake County, Illinois that specializes in injection molding plastic products. (Dkt. No. 31, Ex. A at ¶¶ 2-3 ("Stolzman Aff.")). To create its products, IPCC purchases resin from various suppliers who then deliver the resin to one of IPCC's manufacturers. (*Id.*). Greenpath, a Nevada corporation with its principal place of business in Colton, California, is a commercial recycler that sells recycled resin for use in manufacturing. (Dkt. No. 20-1 at ¶¶ 2-3 ("Castro Decl.")).

On July 22, 2014, Matt Ebbin of IPCC emailed a representative of Greenpath following up on a previous phone conversation and providing the representative information about a request for bids that IPCC was issuing to its resin suppliers. (Dkt. No. 32-1 at ¶ 3, Ex. A). At some point in time, the owner of one of IPCC's manufacturers referred IPCC to Joseph Castro, the principal officer and owner of Greenpath. (Stolzman Aff. at ¶ 5). In or around September 2014, Castro contacted IPCC for the purpose of soliciting business and, thereafter, IPCC began to purchase resin from Greenpath. (*Id.* at ¶¶ 4, 6).

According to the Complaint, IPCC placed multiple purchase orders of resin with Greenpath between November 2014 and June 2015. (Dkt. No. 1, Ex. A at ¶ 1 ("Compl.")). The orders totaled 355,720 pounds of resin for $172,361.10 and were to be delivered to IPCC manufacturers in California. (*Id.* at ¶¶ 1-3). Greenpath issued fifteen invoices in connection with these purchase orders. (*Id.* at ¶ 3, Ex. A). According to Greenpath, each of the purchase orders were delivered and signed for by IPCC agents in California. (Castro Decl. 2 at ¶ 5).

IPCC paid the invoices in full but later discovered Greenpath never delivered the resin it purchased. (*Id.* at 4; Stolzman Aff. at ¶ 11).

In early 2016, IPCC fell behind on payments to Greenpath for certain purchase orders. (Stolzman Aff. at ¶ 12). In February 2016, Greenpath issued a demand letter alleging IPCC owed it $161,734.59. (*Id.* at ¶ 13). After some negotiation, the parties agreed on the amount due and, on July 14, 2016, executed a Promissory Note and Confession of Judgment Statement whereby IPCC agreed to pay Greenpath $130,344.80 by December 4, 2017 according to a schedule set forth in the Note, admitted to liability for the amount due, agreed Greenpath was entitled to judgment against it upon default of the Note, and waived all defenses to any enforcement of judgment. (*Id.* at ¶¶ 14-15, Ex. A-2, A-3). IPCC's attorney also executed a Declaration in Support of Statement Confessing Judgment confirming he advised IPCC with respect to the waiver of rights and defenses under the confession of judgment procedure. (*Id.* at ¶ 16, Ex. D).

The Promissory Note also included a forum selection clause requiring that "all actions or proceedings arising in connection with this note shall be tried and determined only in the state and federal courts located in the State of California." (*Id.* at Ex. A-2). The parties dispute whether there is any overlap between the invoices at issue in Plaintiff's Complaint and the unpaid invoices giving rise to the Promissory Note and, therefore, whether the Complaint is an "action or proceeding arising in connection with" the Note. (*See* Dkt. No. 20 at 2-3; Dkt. No. 31 at 8-9; Dkt. No. 32 at 3-5).

By April 2017, the balance due on the Promissory Note was $67,895.10. (Stolzman Aff. at ¶ 17). In April 2017, IPCC discovered through an internal audit that Greenpath had failed to deliver any of the above-mentioned resin IPCC had purchased between November 2014 and June

2015 to IPCC manufacturers. (Compl. at ¶ 5; Stolzman Aff. at ¶ 18). IPCC discontinued payments under the Promissory Note and, in June 2017, demanded that Greenpath deliver the non-delivered resin or refund the $172,361.10 paid for the non-delivered resin by crediting $67,895.10 of that amount toward IPCC's outstanding balance with Greenpath and paying IPCC the $104,466.00 difference. (Compl. at ¶ 6; Stolzman Aff. at ¶¶ 22-24). Greenpath refused to do either and instead demanded IPCC pay the balance due on the Note, which Greenpath claimed was $76,581.56. (Stolzman Aff. at ¶¶ 25-26).

In August 2017, Greenpath filed an Enforcement of Judgment action against IPCC in the Superior Court of San Bernadino County, California for IPCC's defaulting on the Note. (*Id.* at ¶ 27). On October 12, 2017, Greenpath notified IPCC that judgment had been entered against it in the amount of $128,915.88. (*Id.* at ¶ 29). IPCC filed the Complaint against Greenpath in Lake County, Illinois on October 4, 2017 and Greenpath was served on November 21, 2017. (*See* Dkt. No. 1 at ¶¶ 1-2).

Greenpath has its main office in Colton, California and another office in Reno, Nevada. (Castro Decl. at ¶ 2). Its operations are solely within the state of California and each of the orders placed by IPCC was processed in California, shipped in California and delivered in California. (*Id.* at ¶¶ 3, 7). Greenpath has never provided recycling services in Illinois, advertised in Illinois or solicited business in Illinois, except for the solicitation call Castro made to IPCC in September 2014. (*Id.* at ¶ 4). Greenpath has never had an office, employee, contractor, property or bank account in Illinois. (*Id.*). It is not registered to conduct business in Illinois and has no agent for service of process in Illinois. (*Id.*). The same is true for Castro. (*Id.* at ¶ 5). In fact, Castro's only interactions with IPCC were as a representative of Greenpath and while he was in the state of California. (*Id.*).

IPCC's sole offices are in Lake County, Illinois; it is not licensed to do business in California and has no offices in California. (Stolzman Aff. at ¶ 2).

## DISCUSSION

Defendants argue that the Complaint should be dismissed on several grounds. First, Defendants argue that IPCC fails to establish the Court has personal jurisdiction over Defendants. Second, Defendants argue that venue is improper in this district because the invoices underlying IPCC's Complaint are subject to the Promissory Note and, therefore, the forum selection clause designating California as the exclusive venue. Finally, Defendants argue Plaintiff's claim could have been raised in the Confession of Judgment proceeding and, therefore, is barred by *res judicata*.

The question of personal jurisdiction is typically decided before venue, unless there is a sound reason for reversing the normal order. *See, e.g.*, *Adams v. Raintree Vacation Exch., LLC*, No. 10 C 3264, 2011 WL 1626561, at *3 (N.D. Ill. Apr. 28, 2011) (considering personal jurisdiction question before improper venue question); *see also Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("The question of personal jurisdiction . . . is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum" unless "there is a sound prudential justification for doing so."). Here, there is no reason to reverse this order, particularly as the question of whether venue is improper based on the Promissory Note's forum selection clause is intertwined with the substantive issue of whether IPCC's lawsuit is an "action[] or proceeding[] arising in connection with" the Note in the first place. "[P]ersonal jurisdiction must be addressed and resolved ahead of substantive issues," such as claim preclusion. *Weisskopf v. Marcus*, 695 Fed.Appx. 977, 978 (7th Cir. 2017) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007)); *see also, e.g.*, *Sirazi v. Gen.*

*Mediterranean Holding, SA*, No. 12 C 0653, 2013 WL 812271, at *2 (N.D. Ill. Mar. 5, 2013) (considering whether Court had personal jurisdiction over defendant before turning to *res judicata* argument). Therefore, the Court begins with the question of personal jurisdiction and, because dismissal is proper on these grounds, need not go any further.

## A.     Legal Standard

Rule 12(b)(2) permits dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A plaintiff need not anticipate a personal jurisdiction challenge in its complaint; however, once a defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir.2004). Where, as here, the Court decides a motion challenging jurisdiction on the basis of written submissions, the plaintiff "need only make out a prima facie case of personal jurisdiction." *GCIU-Emp'r Ret. Fund v. Goldfarb Corp*., 565 F.3d 1018, 1023 (7th Cir.2009) (citing *Purdue Res. Found.*, 338 F.3d at 782). In reviewing a motion to dismiss for lack of personal jurisdiction, the Court accepts all well-pleaded factual allegations in the Complaint as true unless controverted by affidavits outside the pleadings. *See Purdue Res. Found.*, 338 F.3d at 782. The Court construes all factual disputes in the plaintiff's favor. *See Tamburo*, 601 F.3d at 700; *Logan Prods., Inc. v. Optibase, Inc*., 103 F.3d 49, 52 (7th Cir.1996).

## B.     Personal Jurisdiction

In a diversity jurisdiction cases such as this one, personal jurisdiction is governed by the law of the forum state. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *Tamburo*, 601 F.3d at 700. The Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. *See Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017); 735 Ill. Comp. Stat. 5/2-209(c). Therefore, the

state and federal constitutional requirements are the same. *See Brook*, 873 F.3d at 552 (citing *Tamburo*, 601 F.3d at 700). Federal due process requires that the defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Wash*, 326 U.S. 310, 316 (1945)). Physical presence in the forum state is not required, but there must be sufficient minimum contacts such that the defendant "should reasonably anticipate being haled into court there." *Id.* (quoting *Burger King Corp*., 417 U.S. 462, 474 (1985)).

A plaintiff can establish personal jurisdiction over a defendant in two ways: through general or specific jurisdiction. *Id.*; *Tamburo*, 601 F.3d at 701. General jurisdiction "is proper only in the limited number of fora in which the defendant can be said to be 'at home.'" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 800 (7th Cir. 2014), as corrected (May 12, 2014). To be subject to general jurisdiction, a defendant must have "continuous and systemic" contacts with the forum state. *Brook*, 873 F.3d at 552. "The threshold for general jurisdiction is high"; "isolated or sporadic contacts . . . are insufficient." *Tamburo*, 601 F.3d at 701. IPCC rightfully concedes that Defendants are not subject to general jurisdiction in Illinois. (*See* Dkt. No. at 11).

Specific jurisdiction requires that a defendant's contacts with the forum state be "directly related to the conduct pertaining to the claims asserted." *Brook*, 873 F.3d at 552. "The 'mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.'" *Advanced Tactical Ordnance* Sys., 751 F.3d at 802 (quoting *Walden v. Fioer*, 134 S.Ct. 1115, 1126 (2014)). Specific jurisdiction is appropriate only where "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury

arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King*, 471 U.S. at 472). The "purposeful-availment requirement ensures that a defendant's amenability to jurisdiction is not based on 'random, fortuitous, or attenuated contacts,' but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *N. Grain Mktg.*, 743 F.3d at 492–93 (quoting *Burger King*, 471 U.S. at 479). "The inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" *Brook*, 873 F.3d at 552.

IPCC argues that Defendants purposefully directed their activities at Illinois when Castro called IPCC in September 2014 for the purpose of soliciting business and that IPCC's claim arose out of the contract resulting from that call. In other words, "but for Castro's solicitation of IPCC, IPCC would never have initiated a contractual relationship with the defendants." (Dkt. No. 31 at 12-13).

"Personal jurisdiction in breach-of-contract actions often turns on whether the defendant 'purposefully availed' himself of the privilege of conducting business or engaging in a transaction in the forum state." *Tamburo*, 601 F.3d 693, 702 (7th Cir. 2010). However, "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Purdue Res. Found.*, 338 F.3d at 781 (quoting *Burger King*, 471 U.S. at 478). Rather, courts conduct a "context-sensitive analysis of the contract," examining the following factors: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' course of actual dealing with each other. *N. Grain Mktg.*, 743 F.3d at 493.

As an initial matter, Defendants dispute that Greenpath was the first to initiate contact between the parties, as IPCC claims. Specifically, Defendants argue and provide an email

showing that Matt Ebbin of IPCC contacted Greenpath in July 2014 about Greenpath potentially becoming an IPCC resin supplier. The Court resolves this factual dispute in Plaintiff's favor, as it must, and assumes Defendants initiated the relationship and solicited the business. However, while the "question of which party initiated or solicited a business transaction has long been considered pertinent" to the question of personal jurisdiction, *N. Grain Mktg.*, 743 F.3d at 493, it is but one factor the Court considers. *See, e.g.*, *Madison Consulting Grp. v. State of S.C.*, 752 F.2d at 1193, 1204 (7th Cir. 1985) (finding of personal jurisdiction did not rely exclusively on defendant's solicitation activities)).

IPCC asserts without *any* factual support that, after Castro's solicitation, the parties negotiated and formed the relevant purchase orders in Illinois. (*See* Dkt. No. 30 at 13). Except for the September 2014 call by Castro, IPCC provides *zero* details as to how, where or by whom the purchase orders were negotiated or formed. Instead, Defendants assert, and IPCC does not dispute, that each purchase order was delivered and signed for by IPCC agents in California. If that is the case—and, because IPCC does not dispute these facts, the Court can assume that it is—Defendants established few if any contacts with Illinois through the parties' prior negotiations.

IPCC also provided in support of its argument a copy of a purchase order submitted to Greenpath. (*See* Dkt. No. 31 at Ex. A-1). The purchase order is on IPCC letterhead and states that the contract is governed by Illinois law. (*Id.*) A choice-of-law provision *can* be an indication that a defendant has purposefully availed itself of the laws of a particular state but generally is not determinative of whether personal jurisdiction exists. *See Purdue Res. Found.*, 338 F.3d at 786. Moreover, this factor is given less weight where, as here, the defendant did not actually negotiate the choice-of-law provision. *Id.* Here, IPCC does not claim that

Greenpath negotiated this choice-of-law provision or even that Greenpath ever saw the purchase order provided, and Greenpath, claims that it never received the purchase order. (Dkt. No. 31-1 at ¶ 4). In any event, even if the purchase order is governed by Illinois law and Greenpath negotiated for that provision, it contains no forum selection clause and says nothing whatsoever about *where* the parties contemplated they might sue or be sued. *See, e.g., Jack Schenk v. Knightscope, Inc.*, No. 17 C 7529, 2018 WL 1726425, at *3 (N.D. Ill. Apr. 10, 2018) (the fact that the parties' contract, governed by Illinois law, contained no forum selection clause weighed against finding personal jurisdiction in Illinois). In fact, when the parties did negotiate this issue in relation to the Promissory Note, they selected California and not Illinois as the exclusive venue for dispute resolution.

Ultimately, the terms of the contract and the parties' course of actual dealings weigh heavily against finding Defendants subject to personal jurisdiction in Illinois. IPCC submitted orders to Greenpath in California for the purchase of resin in California for delivery to a manufacturer in California. Defendants' *only* contacts with Illinois were Castro's September 2014 call to solicit business and its contract with an Illinois entity. These are not sufficient minimum contacts to establish specific jurisdiction.

*Northern Grain Marketing* is instructive here. There, the defendant, a farmer in Wisconsin, traveled to a seed-corn trade show in Illinois to learn about the latest seed-corn technology and, while there, met one of the plaintiff's employees whose job it was to buy and market grain. 743 F.3d at 489-90. The farmer returned to Wisconsin but kept in touch with the employee and eventually agreed to sell grain to the plaintiff, an Illinois company. *Id.* at 490. The farmer sold grain to the plaintiff for nine years, always delivering the grain produced at his farm in Wisconsin to one of the plaintiff's grain elevators in Wisconsin. *Id.* The farmer and

employee kept in touch by phone or, if they met in person, met somewhere in Wisconsin. *Id.* Eventually, a dispute arose and the plaintiff-company sued the farmer in an Illinois state court and the farmer removed the case to federal court and successfully moved to dismiss the action for lack of personal jurisdiction in Illinois. *Id.* at 490-91. The Seventh Circuit affirmed the dismissal, finding that the nature of the contractual relationship belied any idea that sufficient minimum contacts existed to support personal jurisdiction:

> [Defendant's] contractual duty was to grow his grain on his Wisconsin farm and deliver it to a Wisconsin grain elevator. [Plaintiff's] duty was simply to compensate [defendant] for the grain. [Defendant] wasn't actively marketing his grain to other Illinois companies; he just happened to get acquainted with [plaintiff's employee] at the seed-corn trade meeting in Illinois. It was several months before [the employee's] negotiations with [defendant] in Wisconsin ripened into the first contract with [plaintiff]. Moreover, the record gives no indication that [defendant] knew (or cared) what [plaintiff] did with his grain after each sale.

*Id.* at 496. The facts are similar here. Greenpath's contractual duty was to supply and deliver resin in California; IPCC's was to compensate Greenpath for doing so. Greenpath did not market its resin to other Illinois companies and nothing indicates it knew or cared what IPCC or its manufacturers did with the resin it delivered. The only distinction is that here, the parties' meeting was not as fortuitous as they did not "just happen to get acquainted"; a mutual business partner introduced them and, construing the facts in favor of Plaintiff, Castro ultimately initiated the business relationship. But one phone call to one Illinois resident is too attenuated a contact to establish personal jurisdiction in this state, particularly in light of the other factors already discussed weighing against it. Also, Greenpath may have initiated the relationship but it was on IPCC to initiate each purchase order from that point forward.

Based on the Complaint and written materials submitted by the parties, IPCC failed to meet its burden to show that Defendants have sufficient minimum contacts with Illinois to establish personal jurisdiction in this state.

## **CONCLUSION**

For the reasons stated above, the Court grants Defendants' Motion to Dismiss [19] without prejudice pursuant to Rule 12(b)(2).


Hon. Virginia M. Kendall
United States District Judge

Date: April 24, 2018